IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORIN TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 14-276-GMS |
| | ) |
| COMMISSIONER COUPE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, Orin Turner ("Turner"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit on February 28, 2014 pursuant to 42 U.S.C. § 1983.[1] (D.I. 3.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 5, 7.) The court dismissed the original complaint and gave Turner leave to amend. (D.I. 10). The court proceeds to review and screen the amended complaint filed on July 17, 2014. (D.I. 11).

## I. BACKGROUND

In July of 2013, Turner was moved to the D/East Building, a Medium-High Security Unit ("MHU"). Upon his arrival, he encountered the defendant Sgt. Dome ("Dome") who advised Turner that he would not be there long because he did not want trouble in his building. According to Turner, Iman Anas placed him on the list to attend religion classes Monday through Thursday, but Turner was only allowed to attend Friday prayers. Turner attended four classes from July 2013 to September 24, 2013, not counting Friday Jummah services or Saturday Taleem

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

services. Turner verified that he was on the list but Dome told him that he was not. Turner spoke to Lt. Trader ("Trader") and the defendant Staff Lt. Endures ("Endures"), both of whom told him they would look into the matter. Turner wrote to the defendant Captain Burton ("Burton") and explained that Dome was refusing to allow him to attend religion classes. Burton also told Turner he would look into the matter. Dome then told Turner that, since he "liked to talk," Turner would never go to class while he was the sergeant of the D/East Building. Turner then wrote to Endures and requested a transfer to another building or to the other side of D/East. (D.I. 11 at 4-6.)

Turner alleges that the D/East Building is roach infested. Upon his transfer to the building, Turner was provided two cardboard boxes to hold his personal items. He kept his clothing in one box and food items in the other box. Roaches nested in the boxes and hatched babies. Turners stopped using the boxes and began using plastic bags. Turner alleges that one evening he awakened just before a roach crawled into his ear. Turner submitted a grievance and it was denied. Later, when Scott ("Scott") and Boon ("Boon") inspected the building, Boon told Turner that the grievance should not have been denied and that he would take the matter to Major Brennan ("Brennan"). Turner heard nothing. (*Id.* at 7-8).

Turner alleges that while he was housed in D/East Building, the defendant Counselor Scott-Knight ("Knight") denied him jobs and education. Turner had been classified to school, programs, and jobs as part of his treatment assessment by the classification staff. Turner advised Knight that he was being harassed by Dome, complained that he had yet to start programming or receive a job, and requested a transfer from the prison. Turner alleges that Knight did not submit his name for the new cycle of programs or school. When he again complained to Knight, she

told him there was nothing she could do about it. Turner wrote to head counselor Milborne ("Milborne") and submitted a grievance because he was treated differently from other inmates who were classified for work. (*Id.* at 6-7).

After Turner spoke to Knight and requested a transfer and, after writing to Internal Affairs, Milborne, and the defendants Major Carrothers ("Carrothers"), Enduras, and Burton, he was told by Knight that she would see him in March 2014 for his classification. Turner then accused Knight of some sort of relationship with Dome and believed that Knight was helping or conspiring with Dome. That same morning, Turner spoke with Burton after he left Knight's office, and he saw Dome go into the counselor's office to speak to Knight. When Dome returned, Burton asked him what was the problem and he replied that he did not like Turner and Turner responded in kind. That afternoon while in the yard, Dome made disparaging comments to Turner. Turner was called into the building and was told by Dome to pack his bag, that he was "out of his building," and to go lock in. Turner was never moved. On September 3, 2013, he filed a complaint for harassment. (*Id.* at 8-10).

Turner alleges that Dome began to verbally assault him after he filed his September 11, 2013 formal complaint to the defendant Delaware Department of Correction ("DOC") Commissioner Coupe ("Coupe"), wherein he complained of issues with roaches, jobs, educations, programs, and he requested a transfer from the VCC. Turner also made a formal complaint to the defendant Warden Pierce ("Pierce") regarding the unfair treatment he had received. Turner told Pierce that he was at his wits end with Dome and indicated that he had met with Burton regarding the problem, but that it was getting worse. On September 24, 2013, the defendant C/O Torres ("Torres") told Turner to pack his bags, and he was moved to the Security

Housing Unit ("SHU"). Turner had no write-ups or major infractions and questioned Torres about the move. Torres told Turner the reason for the move was the four-page letter Turner had written to the Commissioner's office. (*Id.* at 9-10.)

Turner wrote to the defendants counselor McMahon ("McMahon") and Pierce on September 25, 2013, and asked why he had been transferred to SHU. McMahon advised Turner that the warden could house him wherever he chose. Turner also wrote to the defendants Carrothers, Deputy Warden Scarobrough ("Scarobrough"), Lt. Daum ("Daum"), and St. Lt. Simon ("Simon"), to find out why he was transferred to SHU. After receiving no answers, Turner submitted a grievance concerning his transfer to SHU. (*Id.* at ex. I.) Next, he wrote to Bureau of Prisons ("BOP) Bureau Chief Perry Phelps ("Phelps") and asked him to check his status because he was now housed in SHU. Phelps responded and advised Turner that he had a classification of fifteen points, medium housing.[2] (*Id.* at ex. C.) Turner then wrote to Pierce on October 27, 2013 and included the memo from Phelps and asked why he remained in SHU when he had only fifteen points which warranted a medium-high security status. He received no answer. (*Id.* at 2, 11.)

On October 29, 2013, Turner was advised by the defendant Captain Rispoli ("Rispoli") that he had been housed in SHU by the warden because Turner had "to learn a lesson." Turner wrote to the defendant Deputy Warden Parks ("Parks") and submitted another grievance for retaliation. (*Id.* at ex. I.) Turner wrote to Coupe on October 31, 2013, complained of the transfer to SHU, and asked him to look into the matter. He again wrote to Coupe on November 14, 2013,

---

[2] According to McMahon, as of March 25, 2014, Turner had acquired 17 points, maximum security. (*Id.* at ex. F.)

4

and asked Coupe to transfer him from the VCC. Coupe referred Turner to the warden. (*Id.* at 12.)

Turner submitted a grievance on November 17, 2013 concerning the psychological effect his housing assignment was having on him. (*Id.* at ex. I.) He also spoke to Burton who told Turner that the warden had Turner transferred to SHU because of the letter he had written to Coupe when Turner was housed in D Building. Turner wrote to Brennan and to Carroll Powell ("Powell") in support services and asked for help in obtaining an interstate compact. In addition, he spoke to the defendant Staff Lt. Reynolds ("Reynolds") who informed Turner that the warden did not like him, that the warden had transferred Turner to SHU for the letter he had written and said, "I told you to put your pen down." (*Id.*)

Turner wrote to Carrothers on November 27, 2013 regarding his transfer to SHU due to retaliation and violation of his right to due process. Turner sent a letter on January 12, 2014 to the BOP complaining of his transfer to SHU and he spoke to Reynolds on March 21, 2014, who advised him that Pierce had placed Turner in SHU. On April 23, 2014 Reynolds told Turner that he remained on the SHU list and that it would take two years before he was transferred from SHU. Reynolds told Turner that he "should not have pissed Warden Pierce off so when he gives the OK then you will leave." On June 2, 2014, Turner wrote to Phelps and asked why he remained on the SHU list and why it would take two years to be transferred from SHU. (*Id.* at 12-13; ex. I.) Finally, Turner alleges that his phone numbers do not work and his mail was opened in retaliation for the letter and the grievances he submitted. (*Id.* at 13-14.) Turner seeks compensatory damages.

## II. STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Turner proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on

6

12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Turner leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. When determining whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Religion

Turner alleges, generally, that he was denied the right to attend religious services by Dome. He specifically alleges that he was on the list to attend religion classes Monday through

Thursday, but Dome indicated that he was not on the list. The amended complaint includes that Turner attended four religion classes from July 2013 to September 2013, and also attended Friday Jummah services and Saturday Taleem services.

Incarcerated persons have a statutory right to follow the religious teachings of their choice. Because Turner proceeds *pro se*, the court liberally construes his pleading and considers his religion claim under the Religious Land Use and Institutionalized Persons Act of 2000, (RLUIPA), 42 U.S.C. § 2000cc and 42 U.S.C. § 1983. RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). To prevail under RLUIPA, an inmate must demonstrate that the State has imposed a "substantial burden" on the inmate's "religious exercise." Because RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," this provision applies to Turner's participation in prayer and religious education. 42 U.S.C. § 2000cc-5. If Turner can produce prima facie evidence that Dome imposed a substantial burden on his religious exercise, the burden shifts to the defendants to demonstrate that the challenged regulation furthers a compelling governmental interest and is the least restrictive means of furthering that compelling interest. *See* 42 U.S.C. § 2000cc-1(a) and 2(b).

The allegations do not demonstrate that Dome imposed a substantial burden on religious exercise. "[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to

other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Here, Turner complains that he has been denied access to religious instruction. However, Turner does not allege that his religious exercise has become impracticable, that he has been forced to abandon the precepts of his religion, or that he has been forced to act in a way that violates his sincerely held religious beliefs. Indeed, he alleges that he attends services on Friday and Saturdays and has attended some religion classes. The amended complaint fails to allege the imposition of a substantial burden on Turner's religious exercise by imposing regulations that may affect his access to religious services and instruction.

To the extent that Turner raises a § 1983 claim for violation of his right to freely exercise his religion under the First Amendment by denying him religions classes, the First Amendment "imposes similar, but less strict, standards on prison administrators than RLUIPA." *Williams v. Bitner*, 359 F. Supp. 2d 370, 378 (M.D. Pa. 2005), *aff'd*, 455 F.3d 186 (3d Cir. 2006). Given that Turner's claim under the RLUIPA is frivolous and that the standard under RLUIPA is stricter than under the First Amendment, the court finds it unnecessary to evaluate Turner's claims of denial of religion classes under the four-factor test set forth in *Turner v. Safley*, 482 U.S. 78 (1987). The denial of religion classes claim is frivolous and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**B. Jobs and Education**

Turner alleges that he was denied a job and education while housed in the D/East Building. Neither claim is a violation of Turner's constitutional rights. Prisoners have no

9

entitlement to a specific job, or even to any job. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989). In addition, prisoners have no constitutional right to an education. *See Flanyak v. Ross*, 153 F. App'x 810, 812 (3d Cir. 2005) (unpublished). Both claims are legally frivolous and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### C. Harassment

Turner alleges that he was harassed by Dome. Verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983. *Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009) (unpublished); *see also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993) (verbal abuse and harassment does not rise to the level of a constitutional violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights). In addition, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him).

Plaintiff's claims against Dome for harassment are not cognizable under § 1983. Therefore, they will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### D. Classification/Housing Assignment

Turner claims that his custody status classification and transfer from MHU to SHU housing was done in violation of his right to due process. It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a

10

particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Moreover, the custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. Turner's complaints that he was wrongfully transferred to SHU fail to state a claim of constitutional dimension and, therefore, will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### E. Conditions of Confinement

Turner alleges that while he was confined in the D/East Building he was subjected to unlawful conditions of confinement by reason of a roach infestation. A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To prevail on such a claim, an inmate must show that he is "incarcerated under conditions posing a substantial risk of serious harm," and that the defendant was deliberately indifferent to the risk. *See Farmer v. Brennan*, 511 U.S. 825, 833, 837 (1994). To establish deliberate indifference, a plaintiff must show that the individual was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it. *See Farmer*, 511 U.S. at 837. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not

sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Prolonged infestation may satisfy the objective component of an Eighth Amendment claim. *See, e.g., Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (sixteen months of infestation coupled with significant physical harm satisfied objective component). However, confinement in a location infested with bugs for a short period is not sufficiently serious to satisfy the objective standard of an Eighth Amendment claim. *See Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (infestation with roaches, spiders, worms, ants, mice and other unknown insects is uncomfortable but not unconstitutional); *Hill v. Smith*, 2005 WL 2666597, at *7 (M.D. Pa. Oct. 19, 2005) (presence of mice and cockroaches in prison cells does not satisfy objective component).

Here, Turner was housed in location he claims was infested roaches from July to September 2013. It is not clear against whom Turner raises the claim, but the amended complaint alleges that he was told that the grievance he submitted on the issue should not have been denied and that the matter would be taken to Brennan. The claims does not assert facts to show that Brennan participated in any alleged wrongdoing.[3] In addition, the amended complaint does not assert facts showing deliberate indifference. Plaintiff alleges that the building was later inspected by prison personnel. Nor does Turner allege he was harmed by the alleged roach infestation. Therefore, the court will dismiss the claim as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

---

[3]The court will discuss Turner's claims with regard to denial of his grievances and non-responses to his letters in Section III. F.

### F. Grievance Procedure

The amended complaint is replete with claims that Turner submitted grievances and wrote numerous letters complaining of his transferred to SHU and issues regarding his confinement. Turner claims that his grievances were denied and that prison officials did not respond to his letters.

The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (unpublished). To the extent that Turner bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (unpublished) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim as Turner is free to bring a civil rights claim in District Court. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (unpublished) (citing *Flick v. Alba*, 932 F.2d at 729).

Moreover, participation in the after-the-fact review of a grievance is not enough to establish the requisite personal involvement necessary for a § 1983 claim. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (unpublished) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). The claims that prison officials failed to respond to Turner's letters do not state constitutional claims.

For the above reasons, the court will dismiss the claims as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### G. Retaliation

Turner alleges that Pierce retaliated against and transferred him to SHU after he complained to the DOC Commissioner of the conditions of confinement at the VCC. He also alleges that Dome retaliated against him after he made complaints against him. Liberally construing the amended complaint, the court finds that Turner has alleged what appear to be cognizable and non-frivolous retaliation claims against Pierce and Dome. He will be allowed to proceed with the claims.

## IV. CONCLUSION

For the above reasons, Turner will be allowed to proceed with retaliations claims against Pierce and Dome. The court will dismiss all other defendants and all other claims as frivolous pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and § 1915A(b)(1).

An appropriate order will be entered.

UNITED STATES DISTRICT JUDGE

Oct 24, 2014
Wilmington, Delaware